Amaro Luna v. Bondi

BIA
Driscoll, IJ
A059 364 137

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of October, two thousand twenty-five.

PRESENT:
> BETH ROBINSON,
> SARAH A. L. MERRIAM,
> *Circuit Judges.\**

_____

**Albert Modesto Amaro Luna,**
> *Petitioner,*

> v.                                                                22-6399

**Pamela Bondi, United States Attorney General,**
> *Respondent.*

_____

_____

\* Circuit Judge Alison J. Nathan, originally a member of the panel, is temporarily unavailable. The appeal is being decided by the remaining members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

**FOR PETITIONER:**          ALAN SCHOENFELD, Wilmer Cutler Pickering Hale and Dorr, LLP, New York, NY (Marissa Wenzel, Wilmer Cutler Pickering Hale and Dorr, New York, NY; Chris Stevenson, Wilmer Cutler Pickering Hale and Dorr, LLP, Boston, MA; Aaron J. Aisen, ECBA Volunteer Lawyers Project, Inc. Batavia, New York, *on the brief*).

**FOR RESPONDENT:**          CRAIG A. NEWELL, JR., Senior Litigation Counsel, Office of Immigration Litigation (Lindsay B. Glauner, Assistant Director, *on the brief*) *for* Yaakov M. Roth, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED.

Petitioner Albert Modesto Amaro Luna, a native and citizen of the Dominican Republic, seeks review of an August 12, 2022, decision of the BIA affirming a February 22, 2022, decision of an Immigration Judge ("IJ") ordering him removed for a drug trafficking aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction under N.J. Stat. Ann. § 2C:35–5(b)(1). *In re Albert Modesto Amaro Luna*, No. A 059 364 137 (B.I.A. Aug. 12, 2022), *aff'g* No.

2

A 059 364 137 (Immig. Ct. Batavia Feb. 22, 2022). We assume the parties' familiarity with the underlying facts and procedural history.

We have considered the IJ's decision as modified by the BIA, i.e., considering only the grounds the BIA relied on—that Amaro Luna is removable, and ineligible for relief from removal, for having committed an aggravated felony drug trafficking offense.[1] *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). Whether a conviction is an aggravated felony is a question of law that we review de novo. *See Chery v. Garland*, 16 F.4th 980, 983 (2d Cir. 2021).

In evaluating whether a state drug conviction constitutes a removable offense, "we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the [Immigration and Nationality Act]." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013); *Chery*, 16 F.4th at 983. To determine this, we "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the federal analog]." *Mathis v. United States*, 579 U.S. 500, 504 (2016). "'Elements' are the 'constituent parts' of a crime's legal

---

[1] Because the BIA did not reach the IJ's alternative determination that Amaro Luna was removable because he was convicted of two crimes involving moral turpitude, we do not reach Amaro Luna's challenge to that conclusion. *See Chery v. Garland*, 16 F.4th 980, 983 n.2 (2d Cir. 2021) (declining to reach a ground for removal that the BIA did not address).

3

definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* (quoting Black's Law Dictionary 634 (10th ed. 2014)). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits [by pleading] guilty." *Id.* (citations omitted).

"A version of [the categorical] approach, known as the 'modified categorical approach,' applies to 'state statutes that contain several different crimes, each described separately.'" *Mellouli v. Lynch*, 575 U.S. 798, 805 n.4 (2015) (quoting *Moncrieffe*, 569 U.S. at 191); *see also Mathis*, 579 U.S. at 505 ("Some statutes, however, have a more complicated (sometimes called 'divisible') structure . . . list[ing] elements in the alternative, and thereby defin[ing] multiple crimes." (citation omitted)). "In such cases, 'a court may determine which particular offense the noncitizen was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or some comparable judicial record of the factual basis for the plea.'" *Mellouli*, 575 U.S. at 805 n.4 (quoting *Moncrieffe*, 569 U.S. at 191). "Off limits to the adjudicator, however, is any inquiry into the particular facts of the case." *Id.*

We use the categorical approach, rather than the modified categorical approach, to analyze a state statute that does not "list[] multiple elements disjunctively, but instead . . . enumerates various factual means of committing a single element," such as a statute requiring the "use of a 'deadly weapon' as an element of a crime and further provid[ing] that the use of a 'knife, gun, bat, or similar weapon' would all qualify.'" *Mathis*, 579 U.S. at 506. "[T]o determine whether [a statute's] listed items are elements or means," *id.* at 517, "we look to the statute's text and state court decisions interpreting it," *Stankiewicz v. Garland*, 103 F.4th 119, 129 (2d Cir. 2024).

Amaro Luna was convicted in 2020 under N.J. Stat. Ann. § 2C:35–5(a)(1) and 5(b)(1). That statute provides:

> a. . . . it shall be unlawful for any person knowingly or purposely: (1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance or controlled substance analog; . . .
>
> b. Any person who violates subsection a. with respect to: (1) Heroin, or its analog, or coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, or analogs, except that the substances shall not include decocainized coca leaves or extractions which do not contain cocaine or

ecogine, or 3,4-methylenedioxymethamphetamine or 3,4-methylenedioxyamphetamine, in a quantity of five ounces or more including any adulterants or dilutants is guilty of a crime of the first degree.

N.J. Stat. Ann. § 2C:35–5(a)(1) and (b)(1).

"[A]n aggravated felony is defined, in relevant part, as illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18), . . . [and] a drug trafficking crime is defined as any felony punishable under the [Controlled Substances Act]." *Chery*, 16 F.4th at 984 (quotation marks and citation omitted). So the critical question here is whether, as a categorical matter, Amaro Luna's New Jersey conviction was for conduct that would be punishable as a felony under the Controlled Substances Act.

In responding to Amaro Luna's appeal to the BIA, the Government did not challenge the IJ's conclusion that N.J. Stat. Ann. § 2C:35–5(b)(1) encompasses substances not included in the federal drug schedules, such that the statute is overbroad and not a categorical match with the federal drug schedules. Accordingly, the only issue before us is whether § 2C:35–5(b)(1) is divisible; only if the statute is divisible was the agency permitted to consult the record of

6

conviction to determine whether Amaro Luna's conviction related to a substance that is included on the federal drug schedule.[2]

A panel of this Court recently concluded that this statute is indivisible. *See Johnson v. Garland*, No. 23-6590, 2024 WL 4820980, at *3 (2d Cir. Nov. 19, 2024) (summary order) ("In sum, the text of § 2C:35–5(b)(1) establishes that drug identity is not an element of a violation; therefore, at least as to the particular drug involved, this subsection of § 2C:35–5 identifies a single offense and is indivisible."). We agree: the statute does not require proof that the defendant intended to or did manufacture, distribute or dispense a specific substance within the list of substances in subsection (b)(1), and does not impose different punishments for each of the drugs listed in that subsection. *See Stankiewicz*, 103 F.4th at 129–32; *Harbin v. Sessions*, 860 F.3d 58, 64–66 (2d Cir. 2017).

Like the statutes we have previously held indivisible in *Harbin* and *Stankiewicz*, the statute at issue here prescribes a specific offense level (first degree) for an offense that can be committed with various substances, as set forth in subsection (b). "[T]he text does not suggest that a jury must agree on the

---

[2] We thus decline to consider the Government's argument that even if the statute is indivisible, it is still a categorical match with the federal Controlled Substance Act's drug schedules.

particular substance sold. If some jurors believed that a defendant had sold cocaine, and others believed that he had sold heroin, they could still agree that he had sold 'a controlled substance,' and issue a guilty verdict." *Harbin*, 860 F.3d at 65; *see also Stankiewicz*, 103 F.4th at 130–32 (discussing how a New Jersey jury could sustain a conviction for distributing a "controlled dangerous substance" near a school, even when some jurors thought the defendant distributed heroin and others cocaine). Accordingly, the statute "suggests that it creates only a single crime, but provides a number of different factual means by which that crime may be committed." *Harbin*, 860 F.3d at 65. This conclusion is further supported by "the law's penalty provisions, which prescribe the same narrow range of penalties for violations [of the subsection] . . . no matter which controlled substance a defendant has sold." *Id.*

Because we conclude that the statute is not divisible, the agency should not have looked to the record of conviction to determine whether the specific controlled substance involved in Amaro Luna's New Jersey conviction was on the federal drug schedule.

For the foregoing reasons, the petition for review is GRANTED, the BIA's decision is VACATED, and the case is REMANDED for further proceedings

consistent with the order. All pending motions and applications are DENIED

and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court